In re J.K. PRINTING SERVICES, INC. Debtor.

J.K. PRINTING SERVICES, INC. Plaintiff,

v.

UNITED STATES of America, DEPARTMENT OF the TREASURY, INTERNAL REVENUE SERVICE, Defendant.

Bankruptcy No. 683–00221–C.
Adv. No. 685–0007.

United States Bankruptcy Court,
W.D. Virginia,
Charlottesville Division.

May 16, 1985.

Craig T. Redinger, for debtor.

Jean B. Weld, Jennie L. Montgomery, Asst. U.S. Attys., Roanoke, Va., Patricia A. Scott-Clayton, Trial Atty., Tax Div., U.S. Dept. of Justice, William French Smith, U.S. Atty. Gen., and Gerald R. Esposito, Dist. Director, Internal Revenue Service, Washington, D.C., for defendant.

## MEMORANDUM OPINION

WILLIAM E. ANDERSON, Bankruptcy Judge.

On January 25, 1985 the debtor, by its president M. Julia Kelley McKay ("Mrs. McKay"), filed its verified "Complaint for a Temporary Restraining Order and for Preliminary and Permanent Injunctive Relief" against the Internal Revenue Service ("IRS") initiating this adversary proceeding. Upon the request of counsel for the debtor and Mrs. McKay, an *ex parte* hearing was held on that date at which time, based upon the facts set forth in the verified complaint and the representations of the attorney for the debtor, it clearly appeared that immediate and irreparable harm would result to the debtor before the IRS could be heard in opposition. It further appeared that the IRS would not sustain any substantial damage or prejudice by the entry at that time of a Temporary Restraining Order pursuant to F.R.Civ.P. 65(b) and Bankruptcy Rule 7065. A Temporary Restraining Order was entered by the Court at the culmination of that hearing restraining the IRS from further assessment or collection activity in regard to a 100% penalty assessed pursuant to 26 U.S.C. § 6672 against Mrs. McKay, the debtor's founder, president and sole stockholder. The aforementioned Temporary Restraining Order was extended for an additional 10 days by Order of the Court entered on February 4, 1985.

On February 14, 1985 a hearing was held in this matter at Lynchburg, Virginia, during which testimonial and documentary evidence was presented. The IRS filed its "Motion to Dissolve Temporary Restraining Order and to Dismiss Complaint" with supporting memorandum of law at that time. At the conclusion of that hearing counsel for the IRS agreed that the Temporary Restraining Order would continue in effect until the disposition of this matter by the Court and a schedule for the filing of memoranda of law by the parties was set. The Court subsequently requested that the parties file supplemental memoranda of law in which to address the recent case of

*In re The Original Wild West Foods, Inc.,* 45 B.R. 202 (Bkrtcy.W.D.Tx.1984). The last of these supplemental memoranda was filed by the IRS on April 26, 1985 at which time the Court took the matter under advisement.

The Court has consolidated for determination the Complaint of the debtor and the Motion of the IRS to dismiss the same. The matter before the Court is whether or not the IRS shall be enjoined from assessing and collecting from Mrs. McKay a 100% tax penalty for unpaid pre-petition federal withholding and employment taxes pursuant to 26 U.S.C. § 6672.

The Court finds that this is a core proceeding and properly before it. 28 U.S.C. § 157(b)(2)(A).

### FACTS

The debtor filed its petition for relief under Chapter 11 of the Bankruptcy Code on March 17, 1983. On March 26, 1984, the IRS filed an amended proof of claim in the total amount of $3,527.11 for federal employment withholding and FICA taxes due from the debtor for the fourth quarter of 1982 and the first quarter of 1983. Pl.Exh. 1, 2/14/85 hrg. It is apparently undisputed that this is the correct amount owed the IRS by the debtor for pre-petition federal withholding and employment taxes.

The plan of reorganization proposed by the debtor provided that all claims for taxes under 11 U.S.C. § 507(a)(6) were to be paid in full as soon possible after confirmation of the plan. By letter dated April 20, 1984, a copy of which was filed with the Court, counsel for the debtor stated "... that the intent of the Plan is to satisfy the IRS debt, in the amount of $3,527.11, within 120 days from the date of confirmation...." Exh. A. to Def. Motion. The debtor's plan was confirmed by the Court on April 26, 1984. The plan as confirmed conforms to the requirements of 11 U.S.C. § 1129(a)(9)(C).

The debtor has paid all but $2,501.60 of the withholding and FICA taxes for which it has become liable during the pendency of this case. As post-petition withholding and FICA taxes are administrative expenses of the estate, all payments received by the IRS since the filing of the petition have been applied toward those obligations first. No payments have been made to the IRS to date on account of the debtor's pre-petition obligation to the IRS.

Under "form" coverletter dated April 17, 1984, signed by an "Acting Group Manager", the IRS sent Mrs. McKay a Form 2751 Proposed Assessment of 100 Percent Penalty pursuant to 26 U.S.C. § 6672. That letter and Form 2751 *proposed* assessment of a penalty of $2,289.83 against Mrs. McKay for that portion of the debtor's pre-petition federal withholding and employment tax debt owingfor the 1st Quarter of 1983. It further requested Mrs. McKay's agreement to such assessment. Pl.Exhs. 2 & 3, 2/14/85 hrg. The "form" nature of that letter and the fact that the amount of the 100% penalty proposed to be assessed was only for the 1st Quarter of 1983, omitting the additional amount owing for the 4th Quarter of 1982, indicates that this was strictly a routine ministerial act on the part of the IRS.

On November 5, 1984, more than two months after the expiration of the 120 day post-confirmation period within which the $3,527.11 was due to IRS under the debtor's plan as explained by counsel's letter of April 20, 1984, the IRS assessed a 100% penalty against Mrs. McKay in the amount of $2,289.83 for withholding and FICA taxes owed by the debtor for the 1st Quarter of 1983. Def. Exh. A, 2/14/85 hrg. By letter dated January 7, 1985, the IRS gave Mrs. McKay final notice of its intention to levy on her property to collect the penalty assessed. Pl.Exh. 4, 2/14/85 hrg. Subsequently, negotiations took place between counsel for Mrs. McKay and Revenue Officer A.T. Harvey of the Charlottesville, Virginia, office of the IRS, apparently in an attempt to work out an installment payment arrangement. This resulted in a letter dated January 16, 1985 from Harvey to counsel for Mrs. McKay. Pl.Exh. 5, 2/14/85. No such installment payment arrangement was ever entered into.

A Notice of Federal Tax Lien on all property belonging to Mrs. McKay dated January 29, 1985 was filed with the Clerk of the Circuit Court for the City of Charlottesville, Virginia. Def.Exh. A, 2/14/85 hrg. While this filing was made after the date on which the Court entered the aforementioned Temporary Restraining Order, the Court takes judicial notice that the Temporary Restraining Order was entered on January 25th, a Friday, and the Notice of Federal Tax Lien was dated January 29th, the following Tuesday. Therefore, the Court is satisfied that Revenue Officer S.C. Groves, who testified in the hearing held in this matter, did not have knowledge of the entry of the Temporary Restraining Order at the time of filing the Notice of Tax Lien.

The IRS argues in its memorandum to the Court that it has not been proven that collection of the 100% penalty assessed against Mrs. McKay would adversely affect the debtor. On the contrary, the position of the IRS is that collection of the 100% penalty from Mrs. McKay would aid the debtor in its reorganization as it would satisfy one of the debtor's priority claim obligations. However, the only evidence before the Court on this issue is the uncontradicted and rather emotional testimony of Mrs. McKay. It is clear from that testimony that Mrs. McKay is the cornerstone of the debtor's continued vitality. Besides owning all of the stock of the debtor, she manages its business operations and procures new accounts for it. She is apparently without sufficient disposable assets to pay the 100% penalty assessed against her. Therefore, based on her testimony, the Court concludes as a matter of fact that if the IRS were to proceed to collect the 100% penalty assessed against Mrs. McKay by levying on her individually owned property, any hope which the debtor has of rehabilitating itself will be effectively thwarted.

Revenue Officer S.C. Groves testified that levy is only utilized as a method of last resort by the IRS in situations such as these. The Court notes that this is consistent with IRS policy nationwide, *See: United States v. Sotelo,* 436 U.S. 268, 279, 98 S.Ct. 1795, 1802, 56 L.Ed.2d 275 (1978),

however, it is irrelevant to this determination as the IRS is apparently poised to use such method in this case.

## CONCLUSIONS OF LAW

### I.

■ Numerous legal issues are raised by this adversary proceeding. Initially the Court disposes of the argument of the IRS that the Court's Temporary Restraining Order against it was not properly entered. While the Court is unpersuaded that the requirements of F.R.Civ.P. 65(b) were not fully complied with at the time of the entry of that Temporary Restraining Order, the issue of its propriety is now moot in light of the acquiescence of the IRS in its continued effect pending the Court's decision on the merits of the debtor's request for permanent injunctive relief.

### II.

The IRS vigorously contends that the Court is without jurisdiction to enter an order restraining collection of a tax penalty against Mrs. McKay. Collateral to this issue is whether or not the debtor has standing to seek injunctive relief for the benefit of its chief operating officer and sole stockholder.

In support of its position that the Court lacks jurisdiction in this matter, the IRS relies heavily on the case of *United States v. Huckabee Auto Co.,* 46 B.R. 741 (D.C.M.D.Ga.1985). In *Huckabee,* as in the case at the bar, the debtor corporation's confirmed plan of reorganization provided for payment in full of pre-petition FICA and employee withholding taxes as a priority claim under § 507(a), (b), (c) as required by 11 U.S.C. § 1129. The opinion of the district court, in reversing the bankruptcy court, framed the jurisdictional issue as a conflict between 11 U.S.C. § 1129 and 26 U.S.C. § 6672. The court concluded that since the officers of the debtor were not themselves debtors, the bankruptcy court was not the appropriate forum in which to seek injunctive relief for them against the IRS for

their individual tax liabilities. *Id.* at 745. The IRS cites *Reed v. General Finance Loan Co. of Norfolk,* 394 F.2d 509 (4th Cir.1968), for the proposition that *Huckabee* should be followed by bankruptcy courts within the Fourth Circuit.

■ In declining to follow *Huckabee* on this issue, the Court adopts the reasoning and authority set forth by Judge Elliott in his opinion in *Original Wild West Foods,* supra, a case identical to the present case in all relevant facts.* The Court in that case relied on *Bostick v. United States,* 521 F.2d 741 (8th Cir.1975) and its progeny to support its conclusion that jurisdiction to enjoin assessment and collection of the 26 U.S.C. § 6672 100% penalty exists in the bankruptcy court. The *Original Wild West Foods* court also found that the debtor therein had standing because "[t]he Debtor's interest in protecting its ability to reorganize successfully is sufficient to confer standing to enjoin the Internal Revenue Service from ..." further collection efforts against the officer/stockholder. *Original Wild West Foods,* supra, at 205. The Court notes that the majority of the reported court decisions on this issue have likewise determined that such jurisdiction and standing exists. *In re Steel Products, Inc.,* 47 B.R. 44, 12 B.C.D. 1055 (Bkrtcy.W. D.Wash.1984). *In the Matter of Becker's Motor Transportation, Inc.,* 632 F.2d 242 (3rd Cir.1980), cert. den. 450 U.S. 916, 101 S.Ct. 1358, 67 L.Ed.2d 341. *In re Pressimone,* 39 B.R. 240 (N.D.N.Y.1984). *See also, In the Matter of Johnson Electrical Corporation,* 442 F.2d 281 (2nd Cir.1971). *In the Matter of Zook,* 541 F.2d 220 (9th Cir.1976). *Contra, United States v. Rayson Sports, Inc.,* 44 B.R. 280 (N.D.Ill.1984).

The Court concludes that the debtor in this case has standing to seek an injunction against the collection of the 100% penalty assessed against Mrs. McKay pursuant to 26 U.S.C. § 6672. Further, the Court has

---

* The IRS contends that the debtor in this case is in default on its plan payments and, thereby, attempts to distinguish it from *Original Wild West Foods.* While such default may be grounds for a motion to convert the case to one

jurisdiction over this proceeding as the success of the debtor's Chapter 11 reorganization is directly affected by its outcome. 11 U.S.C. § 105(a).

### III.

The IRS challenges the power of the Court to enjoin it from collecting the 100% tax penalty against Mrs. McKay. This challenge is based on 26 U.S.C. § 7421(a) ("The Anti-Injunction Act").

> The purpose of the [Anti-Injunction] Act is to serve "the Government's need to assess and collect taxes as expeditiously as possible with a minimum of pre-enforcement judicial interference", *Bob Jones University v. Simon,* 416 U.S. 725, 736, [94 S.Ct. 2038, 2046, 40 L.Ed.2d 496] ... (1974)....

*In re Pressimone,* supra at 243.

> The Supreme Court has approved only two judicially-created exceptions to the Act's proscription. The first applies in cases where the plaintiff can demonstrate irreparable harm and a *certainty* of success on the merits, ... [*Enochs v. Williams Packing & Navigation Co.,* 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962)]; the second applies in cases where the plaintiff has no alternative legal means of challenging the tax. *South Carolina v. Regan,* [465 U.S. 367, ——, 104 S.Ct. 1107, 1119, 79 L.Ed.2d 372 (1984)].... Neither exception applies to the instant case, since the validity of the assessment is not challenged.

*Id.* at 244. In the present case, as in *Pressimone,* the validity of the assessment of the 100% penalty is not disputed.

Subsection (a) of the Anti-Injunction Act lists several specific exceptions to that statute's prohibition. None of those exceptions listed is applicable to the present situation. 26 U.S.C. § 7421(a).

---

under Chapter 7 or to dismiss it, it is not relevant to this determination as the plan can still be amended to meet the strictures of 11 U.S.C. § 1129(a)(9)(C).

The Court is faced with resolving the inherent conflict between the spirit and purpose of the Bankruptcy Code and the literal reading of the Anti-Injunction Act. *Original Wild West Foods*, supra. at 207. This conflict has been the subject of numerous reported court opinions which illustrate a clear split of authority between those courts which have followed the authority of *In the Matter of Becker's Motor Transportation, Inc.*, 632 F.2d 242 (3rd Cir.1980), cert. den. 450 U.S. 916, 101 S.Ct. 1358, 67 L.Ed.2d 341, and those courts which have followed the authority of *Bostwick v. United States*, 521 F.2d 741 (8th Cir.1975).

■ The arguments on both sides of this conflict have been expounded upon *ad nauseum* in the numerous opinions reported on this issue so as to render the Court's further recitation of those arguments here unnecessary. The Court adopts as its own the reasoning, authority cited, and conclusion of Judge Elliott in his opinion in *Original Wild West Foods* in deciding that it has the power, regardless of the Anti-Injunction Act, to enjoin the IRS from collecting the 100% penalty of 26 U.S.C. § 6672 as assessed against Mrs. McKay because the Court must be able to protect the debtor's opportunity to rehabilitate itself. *See, In re Steel Products, Inc.*, 47 B.R. 44, 12 B.C.D. 1055 (Bkrtcy.W.D.Wash.1984). *Contra, In re Pressimone*, supra. *Franklin Press, Inc. v. United States*, 46 B.R. 523 (Bkrtcy.S.D.Fla.1985). *United States v. Rayson Sports, Inc.*, 44 B.R. 280 (N.D. Ill. 1984).

### IV.

The Court now reaches the merits of the debtor's request that the IRS be enjoined from any further assessment or collection of the 100% penalty against Mrs. McKay pursuant to 26 U.S.C. § 6672.

■ This case is factually identical to *In re Steel Products, Inc.*, supra. The Court reaches the same conclusions on the merits of this case as did the court in that case.

The appropriate order shall be entered enjoining the IRS from collecting any 100%

penalty assessed against Mrs. McKay pursuant to 26 U.S.C. § 6672 which arises out of the debtor's business operations. The injunction shall remain in effect pending the debtor's repayment of its employee withholding and FICA tax obligations to the IRS under its Chapter 11 plan of reorganization. As a condition of the injunction, Mrs. McKay shall not be permitted, without the approval of the Court, to transfer any assets or interests in property to which the IRS would otherwise presently be able to look for satisfaction of its claim. Further, the IRS shall be permitted to complete its assessment of the 100% penalty against Mrs. McKay so long as no action to collect such assessment is made.