**In re GREATER MIDDLE
MISSIONARY BAPTIST
CHURCH, Debtor.**

No. 11–42566.

United States Bankruptcy Court,
E.D. Michigan,
Southern Division,
Detroit.

Dec. 13, 2011.

Arthur C. Kirkland Jr., Southfield, MI, for Debtor.

*OPINION REGARDING MOTION FOR
SANCTIONS [DOCKET NO. 48]*

WALTER SHAPERO, Bankruptcy Judge.

The matter before the Court is American First Federal, Inc.'s Motion for Sanctions against Arthur Kirkland, Debtor's counsel, pursuant to 28 U.S.C. § 1927.

## I. BACKGROUND AND FACTS

In November 1994, Greater Middle Missionary Baptist Church ("Debtor") entered into a construction loan agreement with NBD Bank, N.A., incident to which it executed notes and mortgages in the amount of $400,000. In July 1995, the notes and mortgage were amended to increase the obligation to $475,000. The church property and the property covered by what were three mortgages, comprised five different lots in Ferndale, Michigan. Lots 310, 311, and 458 were the subject of one mortgage; Lot 312 was the subject of another, contemporaneous mortgage; and Lot 457 was the subject of a third, contemporaneous mortgage. All of those instruments were duly recorded. In September 1998, the loan was maturing, and at that time, its balance was some $430,000. On September 9, 1998 or September 10, 1998, a term loan agreement was entered into and subsequently consummated, essentially refinancing the existing loan and extending its due date to September 10, 2003, and continuing the existing mortgages on the indicated property, among other collateral. In November 2003, the notes and each of the mortgages covering all five parcels were assigned to American First Federal, Inc. ("Creditor"). The mortgage assignments were duly recorded. Following those assignments, Debtor continued to make payments for possibly some five years. It would appear that the due date of the note was advanced and extended from time to time during that period. At some point, Debtor defaulted on its obligations under the note and Creditor commenced foreclosure proceedings sometime in November of 2007 on all five parcels covered by the mortgage. The foreclosure proceedings went forward, culminating in sheriff's sales and the issuance of four separate sheriff's deeds, all of which had a common redemption dates of May 20, 2008. Creditor bid at the sheriff's sales on all of the parcels for an amount totaling $352,941.35. In the latter part of May 2008, Creditor and Debtor entered into several dually recorded redemption period extension agreements and releases, covering all five foreclosed upon parcels, which extended the redemption periods and required a monthly payment of certain sums by Debtor to Creditor. Pursuant to those successive extension agreements, Debtor paid approximately $46,800 to Creditor. There were apparently discussions concerning the possibility of additional extensions after the fourth one, but a further extension did not come to fruition either because the parties could not agree on the terms, or because Creditor had decided for one reason or another against any further extension.

Sometime in November or December of 2010, Creditor commenced proceedings in the 45–B District Court in Oakland County, Michigan [1] for possession of all of the property covered by the mortgage and the sheriff's deeds on the basis that the redemption periods had expired and no redemptions had been effected. Sometime in early December 2010, Debtor and its pastor, in pro per, filed an action in the Oakland County Circuit Court [2] against Creditor and also against the law firm and attorneys who represented Creditor in connection with the foreclosure, the sheriff's sales, and in negotiating the first extension agreement, as well as other defendants. In that Circuit Court action, Debtor essentially sought to quiet title to all of the properties, alleging various grounds, including infirmities in the fore-

1. *American First Federal, Inc. v. Greater Middle Baptist Church*, Case No. 11–00121–LT.

2. *Greater Middle Missionary Baptist Church, et al. v. American First Federal, Inc., et al.*, Case No. 10–115481–CH.

closure proceedings and that it had properly redeemed the properties from the indicated foreclosure sales. Incident to the commencement of that Circuit Court action, Debtor apparently also recorded two *lis pendens* covering all of the properties. On February 1, 2011, one day before a scheduled hearing in the District Court case initiated by Creditor, Debtor (represented by counsel) filed a Chapter 11 bankruptcy petition, thus staying the indicated state court actions.

On February 8, 2011, Creditor filed a Motion for an Order Confirming that No Stay is in Effect and Discharging *Lis Pendens*, or, in the Alternative, Lifting the Automatic Stay ("Motion") (Docket No. 15) and a Motion to Expedite Hearing on that Motion (Docket No. 16). On February 9, 2011, the Court entered an Order Granting Creditor's Motion for an Expedited Hearing (Docket No. 17). The Court held that expedited hearing on February 17, 2011, following which an evidentiary hearing was held, following which the Court rendered a bench opinion on March 8, 2011 granting Creditor's Motion. An Order Confirming that No Stay was in Effect and Discharging the *Lis Pendens* (Docket No. 42) was entered on March 17, 2011. Creditor filed the present Motion for Sanctions (Docket No. 48) on April 15, 2011. Pursuant to a motion by the United States Trustee, Debtor's case was dismissed by an Order (Docket No. 56) entered on May 17, 2011. Pursuant to that Order, the Court retained jurisdiction over Creditors Motion for Sanctions. After a hearing on that Motion, the Court took the matter under advisement.

## II. *DISCUSSION*

Creditor argues that the actions taken by Debtor's Counsel with respect to Creditor's Motion were baseless, in bad faith, and that they unjustly multiplied the proceedings in this matter. Specifically, Creditor argues that Debtor's Counsel could have gleaned enough facts from a cursory inspection of the public records to realize that his client's arguments were baseless. Counsel argues that he did not needlessly multiply or delay the proceedings in this court and that he did not learn of many of the facts in this case until they were unveiled during the course of the evidentiary hearing on Creditor's Motion. He argues that, prior to that evidentiary hearing, he was relying on his client's limited representations and incomplete documentation.

The instant Motion invokes as its basis 28 U.S.C. § 1927, which provides that an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." "The purpose of § 1927 is to deter dilatory litigation practices and to punish aggressive tactics that far exceed zealous advocacy." *Garner v. Cuyahoga Cnty. Juvenile Court*, 554 F.3d 624 (6th Cir.2009) (internal quotation marks omitted). "[U]nlike sanctions imposed under a court's inherent authority, § 1927 sanctions require a showing of something less than subjective bad faith, but something more than negligence or incompetence." *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir.2006).

What we have, as became apparent during the course of the various proceedings here, is a situation where a church in the process of losing its building and facilities was trying desperately to keep them, and was doing so by of defending or bringing various state court proceedings without the benefit of counsel (which they may not have been able to afford or could not timely obtain). It seemed that the Bankruptcy Court became

the last possibility and they were able to obtain counsel to invoke that venue. But time became a factor, such a factor that Debtor's Counsel either did not, or was unable to, fully investigate the situation, and in particular, the public records and the recorded chain of documents involved, the proof of which eventually largely led to the Creditor prevailing in its Stay Relief Motion and the bankruptcy case ultimately being dismissed. Debtor's Counsel (1) did not appear to be experienced Chapter 11 counsel, and (2) accepted his client's version of some facts and his client's interpretation of what the legal ramifications of those facts were, without a detailed independent investigation of his own. If he had made his own reasonable inquiry, it is possible that the evidentiary hearing might have been avoided, or not, depending on (a) what the attorney's advice would have been had he found out in advance all of the facts that eventually came out in the evidentiary hearing, and (2) what Debtors' decision would have been, and (c) if Debtor's decision was to choose not to take the attorney's advice, what the attorney would have done and what further proceedings might have resulted if, for instance, Debtor's Counsel then sought to withdraw. However, "the mere finding that an attorney failed to undertake a reasonable inquiry into the basis for a claim does not automatically imply that the proceedings were intentionally or unreasonably multiplied." *Ridder v. City of Springfield,* 109 F.3d 288, 298 (6th Cir.1997). It should also be noted that Debtor's Counsel was retained shortly prior to the Chapter 11 filing and he was not representing Debtor in the state court actions or at the time it filed the *lis pendens* against the properties. Further, after the Court granted Creditor's Motion, on Debtor's Counsel's advice, Debtor (1) did not oppose the Trustee's Motion to Dismiss, (2) did not oppose the language in the Order Dismissing Case providing that the Court would retain jurisdiction to decide Creditor's Motion for Sanctions, (3) voluntarily surrendered possession of the properties to Creditor, (4) stipulated to entry of a possession judgment in the District Court case, alleviating the need for Creditor to obtain or execute a judgment of eviction, and (5) orally stipulated to the facts and made no argument in opposition to the motion for summary judgment filed by Creditor in the state Circuit Court case. Debtor's Counsel's actions, in light of all of the facts and recited circumstances, simply do not rise to the level of what the invoked statute seeks to remedy. One might argue, though the Court makes no findings in that regard, that those actions were the result of either incompetence or negligence, or, alternatively and possibly more accurately, a failing in the inherent duty of skepticism and objectivity that an attorney should bring to his relationship to his client (even a client that is a church) for the good of the client as well as the attorney. In any event, Debtor's Counsel's actions were no more than any of those, and, individually or *in toto*, were not actions that can be characterized or found to be the punishable aggressive tactics that so far exceeded zealous advocacy as to require or permit sanctions from this Court under the cited statute.

### III. *CONCLUSION*

For those reasons, Creditor's Motion for Sanctions is **DENIED**.