**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | | |
|---|---|---|
| In re: | ) | BAP No.   MT-14-1499-KlPaJu |
| | ) | |
| DANIEL BRUCE CARPENTER and | ) | Bk. No.   2:13-bk-61192-RBK |
| MARY ESTHER CARPENTER, | ) | |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| DANIEL BRUCE CARPENTER; MARY | ) | |
| ESTHER CARPENTER, | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | **O P I N I O N** |
| | ) | |
| MONTANA DEPARTMENT OF LABOR | ) | |
| AND INDUSTRY UNEMPLOYMENT | ) | |
| INSURANCE CONTRIBUTIONS BUREAU, | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

Argued by Video Conference
and Submitted on July 23, 2015

Filed – November 18, 2015

Appeal from the United States Bankruptcy Court
for the District of Montana

Honorable Ralph B. Kirscher, Chief Bankruptcy Judge, Presiding
_____

Appearances:   Harold V. Dye, Dye & Moe, PLLP, argued for appellants; Joseph Richard Nevin argued for appellee.
_____

Before:  KLEIN,[1] PAPPAS, and JURY, Bankruptcy Judges.

_____

[1] Hon. Christopher M. Klein, U.S. Bankruptcy Judge, Eastern District of California, sitting by designation.

KLEIN, Bankruptcy Judge:

This appeal involves the interplay between priority tax status under 11 U.S.C. § 507(a)(8) and Montana's statute imposing individual liability on "responsible officers" of corporations that do not pay their taxes.

The joint debtors owned and managed a corporation that did not pay its state unemployment taxes within three years before they filed their personal chapter 11 case. The bankruptcy court held that Montana's tax claim for unpaid corporate taxes is a § 507(a)(8)(E) excise tax priority claim in their personal case.

The court rejected the debtors' argument that, by negative inference from language in § 507(a)(8)(C), the § 507(a)(8)(E) excise tax priority cannot apply to responsible officers. In their view, the tax debt would be a § 507(a)(8)(E) priority tax as to the corporate taxpayer but merely a non-priority tax claim as to them as vicariously-liable individuals. This theory would enable them to confirm a chapter 11 plan without paying the tax debt in full and to escape the incidental consequence of nondischargeable status under § 523(a)(1) for any unpaid portion.

The debtors' negative-implication argument, while plausible, runs counter to too much precedent. We AFFIRM.

                              FACTS

The debtors Daniel and Mary Carpenter were officers and owners of Big Sky Fire Protection, Inc., which sold and serviced fire protection equipment. They were officers responsible for filing Big Sky tax returns and paying its taxes.

2

Unemployment tax contributions owed by Big Sky pursuant to Montana Code Annotated § 39-51-1103(1)[2] were not paid from October 2011 through June 2013.

The Montana Department of Labor and Industry, Unemployment Insurance Contributions Bureau, filed a proof of claim asserting § 507(a)(8) priority status for $78,757.29, including $125.00 in penalties. Attached was a statement of account addressed to "Big Sky Fire Protection Inc Attn Daniel Carpenter."

The debtors objected to the claim, asserting that Big Sky's tax debt was not a priority claim as to them despite Montana's responsible persons statute, which makes officers personally liable for unpaid corporate taxes. MONT. CODE ANN. § 39-51-1105.[3]

---

[2]Montana's unemployment tax "contributions" accrue and are payable as follows:

> (1) Contributions accrue and become payable by each employer for each calendar year in which the employer is subject to this chapter with respect to wages, as defined in 39-51-201, paid for employment, as defined in this chapter, occurring during the calendar year.

MONT. CODE ANN. § 38-51-1103(1).

[3]Montana's responsible person liability statute provides:

(1) The officer of a corporation whose responsibility is to pay the taxes, penalties, and interest, as provided by 39-51-404, 39-51-1103(1) and (2), 39-51-1125(1), and 39-51-1301, is liable for the taxes, penalties, and interest due.

(2)(a) The department shall consider the officer of the corporation individually liable with the corporation for filing reports and unpaid taxes, penalties, and interest upon a determination that the corporate officer:

> (i) possessed the responsibility to file reports and pay taxes on behalf of the corporation; and
> (continued...)

3

The debtors conceded that unemployment taxes are an "excise tax" on employers under § 507(a)(8)(E). But, they contended that as to them as the employer's vicariously-liable officers, the tax debt is entitled to priority status only to the extent provided by § 507(a)(8)(C), which applies to so-called "trust fund" taxes "required to be collected or withheld" and for which the debtors are "liable in whatever capacity." 11 U.S.C. § 507(a)(8)(C).

The debtors relied on our 2012 Hansen decision, holding that unemployment insurance contributions were not taxes "to be

---

[3](...continued)
       (ii) possessed the responsibility on behalf of the corporation to direct the filing of reports or payment of other corporate obligations and exercised the responsibility that resulted in failure to file reports or pay taxes due.

  (b) The department is not limited to considering the elements set forth in subsection (2)(a) to establish individual liability and may consider other available information.

(3) The liability imposed upon an individual by this section remains unaffected by the bankruptcy of a business entity to which a discharge cannot be granted under 11 U.S.C. 727. The individual is liable for the unpaid amount of taxes, penalties, and interest.

(4) In the case of a limited liability company treated as a partnership pursuant to 39-51-207, the liability for unemployment insurance taxes, penalties, and interest owed extends jointly and severally to each member and to each manager, if any.

(5) In the case of a limited liability company that is not treated as a partnership pursuant to 39-51-207, liability for unemployment insurance taxes, penalties, and interest owed extends jointly and severally to the managers and members of the limited liability company.

MONT. CODE ANN. § 39-51-1105.

4

collected," i.e. trust fund taxes, hence not entitled to § 507(a)(8)(C) priority. <u>Cal. Employment Dev. Dep't v. Hansen (In re Hansen)</u>, 470 B.R. 535 (9th Cir. BAP 2012).

The state clarified that its basis for claiming priority tax status was a § 507(a)(8)(E) excise tax for which it asserted the debtors are individually liable, not a § 507(a)(8)(C) trust fund tax. It urged that its unemployment tax qualifies as an excise tax under the Ninth Circuit <u>Lorber</u> test. <u>Cal. Self-Ins. Sec. Fund v. Lorber Indus. of Cal. (In re Lorber Indus. of Cal.)</u>, 564 F.3d 1098, 1101 (9th Cir. 2009) ("<u>Lorber</u>").

Following an evidentiary hearing to establish the facts, the bankruptcy court overruled the objection and allowed the Montana claim as a priority claim to the extent of $78,632.29 and as a general unsecured claim to the extent of the $125.00 penalty. <u>In re Carpenter</u>, 519 B.R. 811, 818 (Bankr. D. Mont. 2014).

The debtors timely appealed.

JURISDICTION

Federal subject matter jurisdiction is founded on 28 U.S.C. § 1334. A bankruptcy judge may hear and determine an objection to claim. 11 U.S.C. § 157(b)(2)(B). We have appellate jurisdiction under 28 U.S.C. § 158(a)(1).

ISSUE ON APPEAL

Whether the claim for a corporation's unpaid Montana unemployment insurance taxes is an 11 U.S.C. § 507(a)(8)(E) priority claim against vicariously-liable individuals.

///

STANDARD OF REVIEW

As no findings of fact are questioned, the issues are questions of law reviewed de novo. Litton Loan Serv'g, LP v. Garvida (In re Garvida), 347 B.R. 697, 703 (9th Cir. BAP 2006).

DISCUSSION

The battle over § 507(a)(8) priority tax status matters for two main reasons in chapter 11 cases. First, a confirmable plan must provide for full payment of priority taxes within five years after the order for relief (unless the taxing entity agrees otherwise). 11 U.S.C. § 1129(a)(9)(C). Second, as to the individual chapter 11 debtors, unpaid § 507(a)(8) priority taxes are excepted from discharge. 11 U.S.C. § 523(a)(1)(A).

I

The debtors argue from a negative inference based on comparison of the language of various § 507(a)(8) subsections.

A

The foundation for the debtors' argument lies in the structure of § 507(a)(8).

Subsections (A) through (F) identify six tax categories that qualify as priority debts:

(1) taxes measured by income or gross receipts, 11 U.S.C. § 507(a)(8)(A);
(2) property taxes, 11 U.S.C. § 507(a)(8)(B);
(3) trust fund taxes (i.e., taxes "required to be collected or withheld"), 11 U.S.C. § 507(a)(8)(C);
(4) employment taxes on § 507(a)(4) priority wage claims, 11 U.S.C. § 507(a)(8)(D);
(5) excise taxes, 11 U.S.C. § 507(a)(8)(E); and
(6) customs duties, 11 U.S.C. § 507(a)(8)(F).

6

Each of these 11 U.S.C. § 507(a)(8) priority tax categories, except trust fund taxes, is temporary and measured by specified lookback periods ranging from 240 days to three years. Taxes older than the lookback periods are non-priority claims that do not necessarily have to be paid in full in a chapter 11 case and that do not automatically give rise to nondischargeable debts.

The § 507(a)(8)(C) trust fund provision is unique in three respects. First, there is no lookback limitation. Thus, trust fund taxes are perpetually § 507(a)(8) priority taxes and, hence, are always nondischargeable under § 523(a)(1). Second, it is the only provision in § 507(a)(8) that refers to who is liable for the taxes; it contains the phrase "for which the debtor is liable in whatever capacity." Third, it is focused on a method of collection, rather than describing a separate type of tax.

In other words, there really are only five categories of impositions that can be described as taxes or customs duties, all of which are entitled to priority status and potential exception from discharge only if not stale. The sixth, the trust fund tax, category does not constitute a separate type of tax, but rather prescribes circumstances of collection for which priority status and accompanying nondischargeable status is perpetual.

B

The debtors seize on the phrase "for which the debtor is liable in whatever capacity" in § 507(a)(8)(C) to argue that the absence of such a reference in the other § 507(a)(8) subsections is significant.

The argument is that Congress knows how to provide that

7

persons other than the primary tax debtor are exposed to priority tax status, which it has done in the "trust-fund" portion of § 507(a)(8) with the "liable-in-whatever-capacity" language.

The debtors, relying on the canon of statutory construction that effect must be given to each word, argue that it follows, by negative implication, that the absence of "liable-in-whatever-capacity" language in the other subsections means that persons who are not the primary taxpayers are not required to bear the burden of priority claim status. Since the "liable-in-whatever-capacity" provision is not part of the § 507(a)(8)(E) excise tax provision, it is argued that tax claims against persons who are vicariously liable as "responsible officers" for the excise tax debt of a corporation are not entitled to priority status.

Extra traction for the debtors' argument comes from the proposition that priorities are narrowly construed because they derogate from the principle of equality of distribution among unsecured creditors. Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co., 547 U.S. 651, 667 (2006); Lorber, 564 F.3d at 1100.

Underlying premises of the argument are that the subsections of § 507(a)(8) are mutually exclusive and that a trust fund tax is a separate type of tax. The difficulty is that key precedents treat the categories as overlapping and not necessarily separate.

II

In order to assess the debtors' argument, a review of the history of the priority tax provisions and of judicial constructions is in order.

///

8

A

The phrase "for which the debtor is liable in whatever capacity" is a legacy of the Supreme Court's 1978 interpretation of the 1966 amendments to the former Bankruptcy Act in which Congress permitted, for the first time, discharge of most taxes due and owing more than three years before bankruptcy and prescribed a distribution priority for taxes that were not discharged. Act of July 5, 1966, Pub. L. 89-496, 80 Stat. 270.[4]

One exception to discharge was for trust fund taxes. Those were defined as taxes "which the bankrupt has collected or

---

[4]The 1966 tax discharge provision in the Bankruptcy Act made dischargeable all taxes except those that:

（1) are taxes which became legally due and owing by the bankrupt to the United States or to any State or any subdivision thereof within three years preceding bankruptcy: Provided, however, That a discharge in bankruptcy shall not release a bankrupt from any taxes (a) which were not assessed in any case in which the bankrupt failed to make a return required by law, (b) which were assessed within one year preceding bankruptcy in any case in which the bankrupt failed to make a return required by law, (c) which were not reported on a return made by the bankrupt and which were not assessed prior to bankruptcy by reason of a prohibition on assessment pending the exhaustion of administrative or judicial remedies available to the bankrupt, (d) with respect to which the bankrupt made a false or fraudulent return, or willfully attempted in any manner to evade or defeat, or (e) which the bankrupt has collected or withheld from others as required by the laws of the United States or any State or political subdivision thereof, but has not paid over; but a discharge shall not be a bar to any remedies available under applicable law to the United States or to any State or any subdivision thereof, against the exemption of the bankrupt allowed by law and duly set apart to him under this Act: And provided further, That a discharge in bankruptcy shall not release or affect any tax lien.

Act of July 5, 1966, § 2, 80 Stat. at 270.

withheld from others as required by the laws of the United States or any State or political subdivision thereof, but has not paid over." Bankruptcy Act of 1898, § 17a(1)(e), codified at 11 U.S.C. § 35(a)(1)(e) (1976 ed.). Those taxes were never stale.

A fourth distribution priority was created for all taxes not released by discharge, with the restrictive proviso that "no priority over general unsecured claims shall pertain to taxes not included in the foregoing priority." Bankruptcy Act of 1898, § 64a(4), codified at 11 U.S.C. § 104(a)(4) (1976 ed.).[5] In short, all claims for stale taxes were general unsecured claims and dischargeable, while taxes within the lookback periods and other exceptions were priority taxes and not discharged.

In 1978, the Supreme Court construed the trust fund provision of the 1966 amendment in the context of federal tax liability of responsible parties for withholding taxes. United States v. Sotelo, 436 U.S. 268 (1978). Under Internal Revenue Code § 6672, 26 U.S.C. § 6672, responsible parties are assessed a

---

[5]The new priority section was:

    Sec. 3. Clause (4) of subdivision a of section 64 of such [Bankruptcy] Act, as amended (11 U.S.C. 104), is amended to read as follows:
    "(4) taxes which became legally due and owing by the bankrupt to the United States or to any State or any subdivision thereof which are not released by a discharge in bankruptcy: Provided, however, That no priority over general unsecured claims shall pertain to taxes not included in the foregoing priority: And provided further, That no order shall be made for the payment of a tax assessed against any property of the bankrupt in excess of the value of the interest of the bankrupt estate therein as determined by the court;"

Act of July 5, 1966, § 3, 80 Stat. at 271.

10

"penalty" equal to the amount of the tax not paid over. The bankrupt responsible persons objected that they should not be liable for the taxes of the corporation and that the designation of the obligation as a "penalty" made it dischargeable.

Although the statute made no reference to responsible officers, the Court held that, despite the designation as "penalty," the essential nature of the debt was a tax for purposes of the Bankruptcy Act, which tax debt is not discharged. Sotelo, 436 U.S. at 274-75 & 280-81.

B

Five months after Sotelo was decided, Congress enacted the Bankruptcy Code of 1978, with the phrase "for which the debtor is liable in any capacity" included in § 507(a)(8)(C).[6]

The legislative history explained that the priority section reached the same result as Sotelo.[7]

---

[6]What is now § 507(a)(8) was originally § 507(a)(6). In 1984, it became § 507(a)(7). Bankruptcy Amendments & Federal Judgeship Act of 1984, Pub. L. No. 98-353, § 350(2), 98 Stat. 333, 358. In 1994, it became § 507(a)(8). Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, § 304(c)(2), 108 Stat. 4106, 4132.

[7]The House and Senate floor leader statements are identical:

Taxes which the debtor was required by law to withhold or collect from others and for which he is liable in any capacity, regardless of the age of the tax claims. This category covers the so-called "trust fund" taxes, that is, income taxes which an employer is required to withhold from the pay of his employees, and the employees' share of social security taxes.
In addition, this category includes the liability of a responsible officer under the Internal Revenue Code (sec. 6672) for income taxes or for the employees' share of social
(continued...)

11

Since the basic reasoning of <u>Sotelo</u> was carried forward into the Bankruptcy Code, that decision retains vitality.

One instructive thing about <u>Sotelo</u> is that the Supreme Court construed responsible officer liability as qualifying for priority status even though Bankruptcy Act § 17a(1)(e) did not mention responsible officers and notwithstanding the statutory proviso that "no priority over general unsecured claims shall pertain to taxes not included in the foregoing priority."

Since the Sotelos were held liable as responsible officers on a bankruptcy tax priority that did not mention responsible officers, <u>Sotelo</u> appears to stand for the proposition that a tax priority applies against anyone who is liable for any priority tax within the period specified by the particular priority.

There is no indication in the 1978 legislative history that Congress intended to limit the <u>Sotelo</u> responsible-officer analysis to trust fund taxes and no other category of tax when it enacted the Bankruptcy Code.

---

[7](...continued)
security taxes which that officer was responsible for withholding from the wages of employees and paying to the Treasury, although he was not himself the employer. This priority will operate when a person found to be a responsible officer has himself filed in title 11, and the priority will cover the debtor's responsible officer liability regardless of the age of the tax year to which the tax relates. The U.S. Supreme Court has interpreted present law to require the same result as will be reached under this rule. <u>U.S. v. Sotelo</u>, 436 U.S. [268] (1978).

Statement of Rep. Don Edwards, Sep. 28, 1978, 124 Cong. Rec. 32415-16 & Statement Sen. Dennis DeConcini, Oct. 6, 1978, 124 Cong. Rec. 34015, <u>reprinted at</u> 1978 U.S.C.C.A.N. 6436, 6497 & 6505, 6566.

12

So viewed, there is nothing inconsistent with Sotelo about applying responsible officer liability under applicable nonbankruptcy law to any category of priority tax. But a responsible officer for a tax in any category that is not a trust fund tax would enjoy the same protection from stale tax claims as the taxpayer for whom the officer is responsible.

C

The new 1978 Bankruptcy Code remodeled the tax discharge and priority tax provisions but did not make significant changes.

Under the Bankruptcy Act, the exceptions to discharge for "taxes," without specifying which types of taxes, were in the § 17 discharge exception section, while the priority provisions at § 64a merely afforded priority to any tax debt not discharged. Compare Bankruptcy Act § 17, as amended in 1966, with id. § 64a.

The Bankruptcy Code introduced greater specificity by naming categories of taxes and transferred the tax provisions to the priorities section, § 507(a). Now, the discharge exceptions provide only that any priority tax is not discharged. Compare 11 U.S.C. § 523(a)(1), with id. § 507(a)(8) (formerly § 507(a)(6)).

The exceptions relating to unfiled, late, and fraudulent returns and willful attempts to evade or defeat taxes remained in the discharge provisions. Compare Bankruptcy Act §§ 17a(1)(a)-(d), as amended in 1966, with 11 U.S.C. § 523(a)(1)(B)-(C).

As relevant here, the trust fund tax provision moved from the discharge section to the priority tax section, with the addition of the phrase "for which the debtor is liable in whatever capacity." Compare Bankruptcy Act § 17a(1)(e), as

13

amended in 1966, with 11 U.S.C. § 507(a)(8)(C).[8]

                                    III

The decisional law interpreting the Bankruptcy Code's priority tax provisions has focused on categorization because different categories become stale at different times and whether particular liabilities — especially workers' compensation obligations — are taxes.

One consistent theme in the Ninth Circuit decisions is that the § 507(a)(8) priority categories are not mutually exclusive and not applied mechanically. Ilko v. Cal. Bd. of Equalization (In re Ilko), 651 F.3d 1049, 1056-57 (9th Cir. 2011), adopting & publishing, No. SC-09-1119 (9th Cir. BAP 2009); Shank v. Wash. Dep't of Revenue (In re Shank), 792 F.2d 829, 832 (9th Cir. 1986); accord, 4 COLLIER ON BANKRUPTCY ¶ 507.11[4] (Alan Resnick & Henry Sommer eds., 16th ed. 2013) ("COLLIER").

Another theme is that responsible officer taxes are

---

[8]The 1966 provision excepting trust fund taxes from discharge (which were also entitled to priority) was:

> which the bankrupt has collected or withheld from others as required by the laws of the United States or any State or political subdivision thereof, but has not paid over.

Bankruptcy Act § 17a(1)(e), as amended in 1966.

The 1978 provision affording priority to trust fund taxes (which are also excepted from discharge) is:

> a tax required to be collected or withheld and for which the debtor is liable in whatever capacity.

11 U.S.C. § 507(a)(8)(C) (originally § 507(a)(6)).

14

enforceable for any category of priority tax. <u>Ilko</u>, 651 F.3d at 1057-59 (§ 507(a)(8)(A)(iii)); <u>Shank</u>, 792 F.2d at 832 (§ 507(a)(8)(E)); <u>George v. Cal. Bd. of Equalization (In re George)</u>, 95 B.R. 718, 720-21 (9th Cir. BAP 1989), <u>aff'd mem.</u>, 905 F.2d 1540 (9th Cir. 1990) (§ 507(a)(8)(E)); <u>accord</u>, 4 COLLIER ¶ 507.11[4].

Similarly, not every responsible officer liability is a trust fund obligation. <u>Ilko</u>, 651 F.3d at 1056-57; <u>Hansen</u>, 470 B.R. at 542-45.

Substance controls form. Thus, a five-part test has emerged for determining what constitutes a § 507(a)(8)(E) priority excise tax. <u>Lorber</u>, 564 F.3d at 1101-02; <u>George v. Uninsured Employers Fund (In re George)</u>, 361 F.3d 1157, 1162-63 (9th Cir. 2004); <u>County Sanitation Dist. No. 2 v. Lorber Indus. of Cal., Inc. (In re Lorber Indus. of Cal., Inc.)</u>, 675 F.2d 1062, 1066 (9th Cir. 1982).[9]

IV

This brings us back to our decision in <u>Hansen</u>, which the debtors contend is controlling. It is not.

_____

[9]The Ninth Circuit test for a § 507(a)(8)(E) excise tax is: (1) involuntary pecuniary burden, regardless of name, laid upon individual or property; (2) imposed under authority of legislature; (3) for public purposes, including purposes of defraying expense of government or undertakings authorized by it; (4) under the police or taxing power of the state; (5) no private creditor similarly situated to the government can be hypothesized under the relevant statute. <u>Lorber</u>, 564 F.3d at 1101-02. The debtors conceded from the outset that the Montana tax is an excise tax. Our own review of Montana Code § 39-51-1105 confirms that it is an excise tax under the <u>Lorber</u> test.

15

Hansen was an unemployment insurance tax case in which a corporation's responsible officer under California Unemployment Insurance Code § 1735 was assessed in March 2004 for underpaid unemployment insurance taxes. Administrative litigation was settled in March 2009. The responsible officer defaulted after making six of the eleven contractual installments and filed a chapter 7 bankruptcy case in January 2010 in which the taxing authority filed an adversary proceeding seeking determination that the debt was excepted from discharge under § 523(a)(1)(A) as a § 507(a)(8) priority tax.

But, the passage of nearly six years between the date of assessment and the date of the Hansens' bankruptcy posed a stale tax problem. Unable to persuade the court that the various § 507(a)(8) lookback periods should be tolled during the period of administrative litigation, the taxing authority was reduced to arguing that the unemployment tax qualified as a § 507(a)(8)(C) trust fund tax for which liability is perpetual.

The barrier was the "tax required to be collected" element because California unemployment insurance taxes are payable directly by the employer.

Our panel rejected the argument that the phrase "tax required to be collected" in § 507(a)(8)(C) meant required to be collected by the taxing authority. That construction does not square with the legislative history describing trust fund taxes as taxes "which the debtor was required by law to withhold or collect from others." Hansen, 470 B.R. at 544. And, it proves too much — all taxes are "required to be collected" by a taxing

16

authority.

Concluding that the unemployment insurance taxes were not "required to be collected," our panel held that the taxing authority had not established the initial essential element for a § 507(a)(8)(C) trust fund tax.

There being no other basis for § 507(a)(8) status, the tax debt was discharged as stale.

B

The debtors contend that they are in the "exact situation" as the debtor in Hansen. Not so.

The debtor in Hansen was a responsible officer who was vicariously liable with respect to non-trust fund unemployment insurance taxes that were stale under § 507(a)(8)(E) because they were more than three years old.

The debtors in this appeal are responsible officers who are vicariously liable with respect to non-trust fund unemployment insurance taxes that are not stale under § 507(a)(8)(E) because they were less than three years old. Therein lies all the difference.

Since the Hansens' unemployment tax debt was too stale for the § 507(a)(8)(E) priority, the state's only possible route to priority status and the concomitant exception to discharge was the § 507(a)(8)(C) trust fund theory that has no time limit. The insurmountable problem for the state was that the facts did not satisfy the essential element for a trust fund tax that the tax must have been withheld from or collected from third parties. Hansen, 470 B.R. at 44-45. Hence, the unemployment insurance tax

17

was not entitled to priority status and was dischargeable.

C

The debtors' negative inference argument assumes that the various § 507(a)(8) priorities are mutually exclusive.  But Ninth Circuit precedent teaches that the categories are not mutually exclusive.  Ilko, 651 F.3d at 1056-57; Shank, 792 F.2d at 832; accord, 4 COLLIER ¶ 507.11[4].

This brings the analysis back to the Supreme Court's Sotelo decision.  The salient point is that the Court did not construe the responsible officer "penalty" in the Internal Revenue Code as being outside the priority tax provision.  Since there was no mention of responsible officer liability in the Bankruptcy Act, the Court could have applied a narrow construction to deny priority status to responsible officer liability.  Instead, preferring substance over form, it concluded that the responsible officer liability that the tax statute termed a "penalty" was for taxes for purposes of bankruptcy law.  Sotelo, 436 U.S. at 275.

It follows that the Montana statute imposing responsible officer liability on the debtors is, itself, a tax.  Sotelo, 436 U.S. at 275; George, 95 B.R. at 720-21.

The question becomes, what category of tax?  The answer is the same category as the underlying corporate tax — a § 507(a)(8)(E) excise tax.

The rationale, which originates with Sotelo, is twofold.  First, it should not matter whether an individual operates as a sole proprietorship or through a corporation.  Sotelo, 436 U.S. at 281-82.  Second, to hold otherwise would function as an

18

incentive to cause a corporation to default on tax obligations. Sotelo, 436 U.S. at 280-81; Shank, 792 F.2d at 832; George, 95 B.R. at 720-21. We cannot ignore those precedents.

## Conclusion

The liability imposed upon corporate responsible officers by Montana Code § 39-51-1105 is a tax that has the same status as the underlying corporate tax for purposes of § 507(a)(8). Here, it is an "excise" tax under § 507(a)(8)(E) entitled to priority during the three-year period specified in that subsection. As the corporation was not required to collect or withhold the tax from others, it is not a § 507(a)(8)(C) trust fund tax.

Accordingly, we AFFIRM the order of the bankruptcy court.